Michael P. Balaban   State Bar No. 9370
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, NV  89141
(702)586-2964
Fax: (702)586-3023

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TAMMY BOONE,<br><br>       Plaintiff,<br><br>    vs.<br><br>CEMENTATION USA INC., a Nevada Corporation,<br><br>       Defendant. | CASE NO.<br><br>COMPLAINT FOR DAMAGES AND OTHER RELIEF BASED UPON:<br><br>1. HOSTILE ENVIRONMENT SEXUAL<br>    HARASSMENT<br>2. QUID PRO QUO SEXUAL<br>    HARASSMENT<br>3. SEX DISCRIMINATION<br>4. RETALIATION<br><br>JURY DEMAND |

Plaintiff TAMMY BOONE ("Plaintiff" or "Boone") alleges as follows:

## JURISDICTION AND VENUE

1.     This action is brought pursuant to the provisions of Title VII of the Civil Rights Act of 1964, *42 USC §2000e*, et seq. (hereinafter "Title VII") to obtain relief for Plaintiff Boone for discriminating against her, harassing her and retaliating against her, on the basis of her sex (female) in the terms, conditions or privileges of her employment.

2.     At all relevant times, Defendant CEMENTATION USA INC. (hereinafter

1

"Defendant" or "Cementation") employed more than fifteen (15) employees, and they are therefore subject to the provisions of Title VII.

3.      Jurisdiction is predicated under these code sections as well as *28 USC §1331*, as this action involves a federal question.

4.      The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to *28 USC §1391(b)(2),* and the ends of justice so require.

## PARTIES

5.      Plaintiff Boone is a citizen of the United States and resides at 1297 Stoney Way in Fort Mohave, Arizona.

6.      Plaintiff is informed and believes and thereon alleges that at all relevant times giving rise to the claims asserted, Plaintiff was employed by Defendant Cementation, a Nevada Corporation.

7.      Cementation is an employer within the meaning of *42 USC §2000e(b).*

## EXHAUSTION OF REMEDIES

8.      Plaintiff timely filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue by the EEOC on June 26, 2012, a copy of which is attached to Complaint as Exhibit "A".

## STATEMENT OF FACTS

9.      On or about January 6, 2012 Plaintiff was hired to work at Cementation as a Clerk/Purchasing Agent working out of Leeville, Nevada.

10.     During the time Plaintiff was employed by Cementation she was sexually harassed by her supervisor Charlie Lackie.

11.     This started with sexual comments Lackie would make to Boone from when she started working at Cementation.  At first Plaintiff thought the comments were just a joke and Lackie would stop once he saw Boone had no interest in him, but the comments did not stop and sometimes Lackie would make as many as 10-20 sexual comments per day to Plaintiff.

12.     This included, but was not limited to, comments, gestures and actions by Lackie, such as:

a.     Lackie saying "he never gets tired of looking at that behind", when Plaintiff would walk away from Lackie and Lackie saying "he didn't know if he could stand it" with respect to restraining himself from his sexual urges towards Plaintiff;

b.     On or about April 20, 2012, Plaintiff got a text message from Lackie after he got back from his surgery that said "All ok just thought I let u know little sore but not bad I need some to help me bath wondering what your doing after work LOL ttyl;

d.     On or about April 21, 2012, Lackie was off site.  Plaintiff e-mailed him to ask for approval on some paperwork.  Once he responded back, Boone returned with a response of "thanks".  Lackie then responded with, "thanks for what?"  Plaintiff said for responding with approval.  He replied back to Boone, "there are other ways to thank" to which Plaintiff did not reply any further;

e.     On or about April 24, 2012, Kyle Hirsch, Josh Eoff and Boone were in a truck headed to work.  When they got to the site, they had to pick up Lackie in the parking lot. Hirsch and Plaintiff were in the front seat and Eoff was behind Plaintiff in the back seat.  Lackie got in the truck and told Eoff that he wanted to sit behind Boone so he could have a "reach around", referring to the fact he wanted to reach around the seat and grab Plaintiff.  When Boone heard this she shook her head as she looked at Eoff;

f.     On or about April 27, 2012, Plaintiff got in the back seat of a truck to ride over to the dry with Hirsch and Eoff.  Lackie got in the back seat with Boone and looked at her, made his eyebrows go up and down and started moving his hand across the seat towards Plaintiff's legs.  Boone suddenly said "stop it" to Lackie just as Hirsch and Eoff were getting into the truck which made Lackie draw his hand back.

13.     On or about April 26, 2012, Plaintiff was riding home with Hirsch and Eoff (who were both supervisors) and they began to talk about the constant sexual harassment by Lackie towards Boone.  They both asked Plaintiff how she could stand it all day long.  Boone told them

1  she tried to ignore him and just do a good job with the company so she could get a transfer

2  somewhere away from Lackie.

3          14.      Hirsch then asked Plaintiff why she doesn't report Lackie and Boone told Hirsch

4  that she felt she was already out of favor with the company because of a dispute concerning her

5  pay when she was first hired and she was afraid the company would see this as just another

6  problem she was causing.  Hirsch then told Plaintiff he even spoke to his wife about Lackie's

7  sexual harassment towards Boone and Hirsch's wife asked him why he hasn't reported the sexual

8  harassment for Plaintiff since Hirsch is a supervisor.

9          15.      In addition, one of Boone's co-worker's, Jack Budvarson, asked Plaintiff how she

10  could handle Lackie's harassment day in and day out.  Plaintiff responded that she tried to ignore

11  Lackie or would roll her eyes or shake her head to try to get Lackie to stop.  In addition, Plaintiff

12  told Budvarson that on several occasions Boone said to Lackie, "don't you ever stop", implying

13  enough is enough.

14

15          16.      Finally, on or about April 27, 2012, after the incident where Lackie tried to grab

16  Plaintiff's legs, she told Hirsch about the incident and asked him the proper way to report this and

17  other incidents of sexual harassment which Boone had experienced at the hands of Lackie.

18          17.      On or about April 28, 2012 Plaintiff asked Human Resources for a copy of policy

19  and how to filed a complaint for sexual harassment and on or about April 30, 2012 Boone filed a

20  formal complaint for sexual harassment against Lackie with Human Resources.

21          18.      Shortly thereafter Plaintiff employment with Cementation was terminated on or

22  about May 5, 2012.

23                          **FIRST CAUSE OF ACTION**

24              **(Hostile Environment Sexual Harassment in violation of Title VII)**

25          19.      Plaintiff Boone incorporates the allegations set forth in paragraphs 1 through 18,

26  inclusive, as if fully set forth herein.

27          20.      This cause of action is brought pursuant to Title VII as it involves a claim by

28  Plaintiff for "Hostile Environment" sexual harassment which is governed by Title VII.

21.     As previously set forth herein above, Plaintiff was sexually harassed on numerous occasions by her supervisor Charlie Lackie, which created a "Hostile Environment" in the workplace for Boone.

22.     This resulted in Boone filing a formal complaint for sexual harassment against Lackie with Human Resources on or about April 30, 2012.  Shortly thereafter on or about May 5, 2012 Plaintiff was terminated.

23.     As a direct, foreseeable, and legal result of Plaintiff's termination shortly after she filed her sexual harassment complaint, Boone has suffered, overall economic losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

24.     As a further direct, foreseeable, and legal result of the sexual harassment by Lackie and Plaintiff's termination shortly after she reported the sexual harassment, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which she seeks damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

25.     In acting as they did, Cementation knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

26.     Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

27.     Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

## SECOND CAUSE OF ACTION

### (Quid Pro Quo Sexual Harassment in violation of Title VII)

28.     Plaintiff Boone incorporates the allegations set forth in paragraphs 1 through 27, inclusive, as if fully set forth herein.

29.     This cause of action is brought pursuant to Title VII as it involves a claim by Plaintiff for "Quid Pro Quo Sexual Harassment" which is governed by Title VII.

30.     As previously set forth herein above, Charlie Lackie was Plaintiff's supervisor and from the first day Boone started working with Cementation Lackie continued to direct sexual comments and sexual innuendo toward Plaintiff even though she made it clear that she had no interest in Lackie.

31.     About the third week in April, 2012, Boone asked Lackie if he had heard anything from Tim Goodell about her possible transfer to Resolution in Phoenix, Arizona as a Locie operator.  Lackie said he had not heard anything yet but he knew one way to make sure Plaintiff would get transferred, implying that he would make sure that Boone would get transferred if she would acquiesce to his sexual advances.

32.     As set forth above, Plaintiff continued to rebuff Lackie's sexual advances and after he tried to grab her legs on or about April 27, 2012, Boone made a formal complaint against Lackie with Human Resources on or about April 30, 2012.

33.     Thereafter, Plaintiff heard Lackie on the phone to Goodell, telling Goodell not to transfer her.  Boone knew this referred to her since she was the only woman on Lackie's crew.

34.     Plaintiff believes that her refusal to acquiesce to Lackie's sexual advances caused Goodell not to transfer her.  This was an "adverse employment action" under Title VII and represented Quid Pro Quo Sexual Harassment as the action was motivated by Boone's refusal to acquiesce to Lackie's sexual advances which made Lackie tell Goodell to not transfer Plaintiff.

35.     As a direct, foreseeable, and legal result of this Quid Pro Quo Sexual Harassment, Plaintiff has suffered, overall economic losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

36.     As a further direct, foreseeable, and legal result of this Quid Pro Quo Sexual, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which she seeks damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

37.     In acting as they did, Defendant knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

38.     Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

39.     Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

### THIRD CAUSE OF ACTION

### (For Sex Discrimination in Violation of Title VII)

40.     Plaintiff Boone incorporates the allegations set forth in paragraphs 1 through 39, inclusive, as if fully set forth herein.

41.     This cause of action is brought pursuant to Title VII as it involves a claim by Plaintiff for Sex Discrimination which is governed by Title VII.

42.     Plaintiff was performing her job as a Clerk/Purchasing Agent competently and was qualified for that job or for a transfer to another position within the company, including but not limited to, a Locie operator at Resolution in Phoenix, Arizona.

43.     Instead of being transferred and retained by the company, Boone was terminated in favor of men who were no more (or less) qualified or competent than Plaintiff was.

44.     As a direct, foreseeable, and legal result this discrimination because of Boone's sex,

1   Plaintiff has suffered, overall economic losses in earnings, bonuses, job benefits and expenses, in

2   an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

3        45.    As a further direct, foreseeable, and legal result of this discrimination because of

4   her sex, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress,

5   nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of

6   enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time,

7   for which she seeks damages in an amount in excess of the minimum jurisdictional limits of the

8   Court, also to be proven at the time of trial.

9        46.    In acting as they did, Defendant knowingly, willfully, and intentionally acted in

10  conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to

11  oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a

12  sum according to proof at trial.

13       47.    Plaintiff claims the damages alleged herein, together with prejudgment interest as

14       provided by law, in a sum according to proof at trial.

15       48.    Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of

16       her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to

17       proof at trial.

18

19                                 **FOURTH CAUSE OF ACTION**

20                           **(Retaliation in violation of Title VII)**

21       49.    Plaintiff Boone incorporates the allegations set forth in paragraphs 1 through 48,

22  inclusive, as if fully set forth herein.

23       50.    This cause of action is brought pursuant to Title VII as it involves a claim by

24  Plaintiff for retaliation which is governed by Title VII.

25       51.    As set forth herein above, Plaintiff was retaliated against, for reporting to Human

26  Resources at Cementation that she was being sexually harassed by her supervisor Charlie Lackie.

27       52.    This resulted in Boone's termination from the Cementation on or about May 5,

28  2012, shortly after she had reported the sexually harassment to the company on or about April 30,

2012.

53.     As a direct, foreseeable, and legal result of Cementation's retaliation against Plaintiff, Plaintiff has suffered, overall economic losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

54.     As a further direct, foreseeable, and legal result of Cementation's retaliation against Plaintiff, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which she seeks damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

55.     In acting as they did, Defendant Cementation knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

56.     Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

57.     Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Boone demands judgment against Defendant Cementation as follows:

1.      For back pay and front pay for overall economic losses in earnings, bonuses, job benefits and expenses, according to proof at time of trial;

2. For compensatory damages for mental and emotional distress, worry, indignity, mental anxiety, mortification, depression, shame, grief, inconvenience and loss of enjoyment of life and other pecuniary losses, all to Plaintiff's damage in a sum to be shown at the time of trial;

3. For punitive damages;

4. For attorney's fees and costs in an amount determined by the court to be reasonable, pursuant to *42 USC §2000e-5(k)*;

5. For pre-judgment interest on all damages; and

6. For any other and further relief that the Court considers proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

DATED: 9/23/2012

LAW OFFICES OF MICHAEL P. BALABAN

BY: _____

Michael P. Balaban, Esq.
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, NV 89141

# EXHIBIT

# "A"

EEOC Form 161-B (11/09)       U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: Tammy Boone<br>1297 Stoney Way<br>Fort Mohave, AZ 86426 | From: Las Vegas Local Office<br>333 Las Vegas Blvd South<br>Suite-8112<br>Las Vegas, NV 89101 |
|---|---|

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 487-2012-00793 | Miguel Escobar,<br>Investigator | (702) 388-5085 |

(See also the additional information enclosed with this form.)

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Adriana Lopez* (signature)       JUN 2 6 2012

Enclosures(s)

Adriana E. Lopez,
Acting Director

(Date Mailed)

cc:     Willie Finch
Human Resources Director
CEMENTATION U.S.
10150 S. Centennial Pkwy. Suite 110
Sandy, UT 84070