UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TAMMY BOONE<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CEMENTATION USA INC., a Nevada Corporation.<br><br>　　　　Defendant. | Case No. 2:12-CV-01674-APG-NJK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. #21) |

　　　Tammy Boone alleges that, while working for Cementation USA Inc. ("Cementation") as an office clerk, she was sexually harassed by her supervisor on a daily basis. After Boone opposed the harassment, she was allegedly given a negative work evaluation. Boone sued Cementation, alleging four claims: (1) hostile work environment sexual harassment, (2) quid pro quo sexual harassment, (3) gender discrimination; and (4) retaliation. Cementation has moved for summary judgment. (Dkt. #21.)

　　　I rule in Cementation's favor on Boone's claims of hostile work environment, quid pro quo harassment, and gender discrimination. Cementation addressed the alleged harassment with reasonable care and Boone unreasonably failed to take advantage of the available remedies. Cementation is not liable for quid pro quo harassment because Boone has provided no evidence of anything more than an unfulfilled sexual threat, which is insufficient. Boone's gender discrimination claim fails for a variety of reasons, including that there were no open positions for which she was qualified. But I deny Cementation's motion on the retaliation claim. There is a triable issue of fact whether Boone's supervisor retaliated after Boone reported the sexual harassment.

I.  **BACKGROUND**

In January of 2012, Boone began working as an office clerk at Cementation's Leeville, Nevada mining project.[1] The mining project was temporary, and Boone knew her employment would last only until the Leeville project was completed later in 2012.[2]

Boone alleges that about two weeks after she began working, her supervisor, Charlie Lackie, began to sexually harass her.[3] The harassment allegedly took various forms, including: Lackie viewing sexually explicit jokes near where Boone worked;[4] Lackie texting Boone sexually explicit communications, such as that he needed Boone to help him take a bath;[5] Lackie making sexually suggestive comments such as that Boone could thank Lackie in "other ways;"[6] and Lackie telling Boone that he was going to do a "reach around" on her.[7]

On April 7, 2012, Lackie filled out a work-review form for Boone. Lackie marked that Boone qualified for continued employment.[8] He rated Boone's safety, quality of work, and attendance as "five out of five."[9]

On April 27, 2012, Boone discussed the harassment with two of her co-workers.[10] Boone said she felt uncomfortable reporting the harassment, so one of her co-workers decided to make a

---

[1] (Dkt.#29, ¶ 1.)
[2] (Dkt.#29, ¶ 6.)
[3] (Dkt. #21, Ex. A, at 8:19-25; 10:6-14; 9:10-10:5.)
[4] (Dkt. #21, Ex. A, at 20.)
[5] (*Id.* at 56.)
[6] (*Id.* at 233.)
[7] (*Id.* at 9, 16-17.)
[8] (Dkt. #21, Ex. I, at 33-34.)
[9] (*Id.*)
[10] (Dkt. #21, Ex. A, at 166-167.)

report on Boone's behalf. He reported the harassment to Cementation management that same day.[11]

On April 28, 2012, the day after management first received a report of Boone's harassment, Cementation's human resources department contacted Boone.[12] Wiley Finch, the human resources director, told Boone that Cementation would investigate the harassment immediately and remove Lackie from the project if needed.[13] Boone refused to discuss the harassment in detail, but Finch nevertheless offered to place Boone on paid vacation.[14] Boone refused. Finch asked Boone to come into Cementation's Salt Lake City office the following week for a meeting.[15]

Over the next several days, Finch regularly called and emailed Boone to gather information about the alleged harassment.[16] Eventually, Boone cancelled the meeting in Salt Lake City.[17] Finch called and offered to drive to Elko to meet with Boone, but Boone admitted she was already out of state.[18] On May 1, 2012, Boone emailed a complaint to Finch that, for the first time, provided specific details about the alleged harassment.[19] After receiving the complaint,

---

[11] (*Id.* at 112-13.)
[12] (*Id.* at 118-19.)
[13] (*Id.*)
[14] (*Id.* at 118-19.)
[15] (*Id.* at 123.)
[16] (Dkt. #21, Ex. F, at 41-42.)
[17] (Dkt. #21, Ex. H, at ¶8.)
[18] (*Id.*)
[19] (Dkt. #21, Ex. F, at 47.)

Page 3 of 14

Finch attempted to contact Boone several times to gather additional information. Boone never responded.[20]

On May 5, 2012, Boone was laid off because the Leeville project was ending. Lackie filled out Boone's final paperwork and rated her as "above average" for safety and work habits, and "average" for attitude. But he wrote that, overall, he would not recommend her for rehire.[21]

After fully investigating Boone's complaint, Finch concluded that some of the allegations were substantiated and others were not. Finch sent Boone a letter that contained his findings.[22] A "Disciplinary Action Report" was issued against Lackie, and he was required to take sexual harassment training, including a class in workplace harassment and a class in managerial harassment.[23] After her position ended on May 5, 2012, Boone did not apply for a transfer or rehire at Cementation.[24]

On September 23, 2012, Boone filed her lawsuit in this Court. Cementation seeks summary judgment as to all of her claims.

## II.   LEGAL STANDARD - SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

---

[20] (*Id.* at 49.)
[21] (Dkt. #21, Ex. B, at Ex. F.)
[22] (Dkt. #21, Ex. F, at 49:16-50:16.)
[23] (*Id.* at 55:22-56:11.)
[24] (Dkt. #21, Ex. A, at 105-107.)

law."[25]  For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[26]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[27]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[28]  She "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[29]

A party must support or refute the assertion of a fact with admissible evidence.[30]  As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it requires consideration of the same caliber of evidence that would be admitted at trial.[31]  Thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity.

---

[25] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[26] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[28] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[29] *Bhan v. NME Hosps.*, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[30] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.*, 2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009).

[31] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

### III. DISCUSSION

#### A. Quid Pro Quo Harassment

To constitute actionable quid pro quo harassment, a supervisor must explicitly or implicitly threaten to change the plaintiff's job status if she does not accept sexual conduct.[32] Critically, "[a]n unfulfilled, or inchoate, quid pro quo threat by a supervisor is not enough."[33] Instead, the threat must be sufficiently concrete to constitute a "tangible employment action."[34] A tangible employment action in this context occurs either when the employee accedes to the threat,[35] or when the supervisor follows through on the threat by making a significant change in the employee's work status. Making a significant change to an employee's work status includes conduct such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[36]

Boone argues Lackie conditioned her transfer on sexual acts because he suggestively stated he "knew one way" she could get transferred and then failed to give Boone a positive recommendation. But even assuming Lackie's comment was an "implicit" threat, there is no evidence Boone acceded to the threat. Nor is there evidence showing Lackie fulfilled the threat by carrying out a tangible employment action. A negative recommendation is not a "significant change in employment status" and thus cannot constitute a tangible employment action. Boone was never refused a transfer or a rehire because she never applied for either. Her conclusory

---

[32] The supervisor must have "explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job detriment, upon [the] [plaintiff's] acceptance of sexual conduct." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007) (quoting *Nichols v. Frank*, 42 F.3d 503, 510–11 (9th Cir. 1994)) (internal quotation marks omitted).

[33] *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1175 (9th Cir. 2003).

[34] *Id.*

[35] *Id.*

[36] *Id.*

belief that a tangible employment action was likely is insufficient to defeat a motion for summary judgment.[37] Therefore, as a matter of law Boone cannot maintain her quid pro quo harassment claim, so I grant summary judgment in favor of Cementation on it.

### B. Hostile Work Environment

To prove a work environment is hostile, "a plaintiff must show: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment."[38] The environment must be "both objectively and subjectively offensive."[39]

In contrast to quid pro quo liability, employers are not automatically liable for a hostile work environment.[40] The employer may raise an affirmative defense of "reasonable care." The reasonable care defense requires both: "(1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[41] "The legal standard for evaluating an employer's efforts to prevent and correct harassment . . . is not whether any additional steps or measures

---

[37] *Forsberg v. Pacific Northwest Bell Tel.Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988) ("[P]urely conclusory allegations . . . with no concrete, relevant particulars, will not bar summary judgment.").

[38] *Porter v. Cal. Dep't Corr.*, 419 F.3d 885, 892 (9th Cir. 2005) (citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2004)).

[39] *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 997 (9th Cir. 2010) (quoting *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 871–72 (9th Cir. 2001)).

[40] *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986).

[41] *Faragher v. City of Boca Raton*, 524 U.S. 775, 777–78 (1998).

would have been reasonable if employed, but whether the employer's actions as a whole established a reasonable mechanism for prevention and correction."[42]

Even assuming Boone has raised triable issues regarding whether she worked in a hostile work environment,[43] she has not raised a triable issue regarding Cementation's affirmative defense of reasonable care.

### i. Whether Cementation exercised reasonable care to prevent and correct harassment

There is no genuine issue of fact material to whether Cementation exercised reasonable care in preventing harassment. Cementation had an adequate sexual harassment policy in place, and Boone admits she signed it when her employment commenced.[44] There is no evidence Cementation had prior knowledge that Lackie harassed employees and thus should not have been allowed to supervise Boone.[45] There also is no evidence indicating Cementation should have known about Boone's harassment sooner and taken action sooner than it did.

Similarly, there is no genuine dispute of fact material to whether Cementation reasonably corrected the harassment. When the harassment was reported, Cementation management responded immediately and thoroughly. Finch contacted Boone within 24 hours of the report. Finch regularly called and emailed Boone to try to gather facts about her complaint. Finch offered to remove Lackie or to put Boone on paid vacation. Cementation reprimanded Lackie and required him to attend harassment classes. There is no reasonable dispute about whether Cementation established a reasonable mechanism for prevention and correction of harassment.

---

[42] *Holly D.,* 339 F.3d at 1177.

[43] I need not determine whether Boone's allegations rise to the level of objectively "severe and pervasive" because Boone has not rebutted Cementation's showing that its affirmative defense applies.

[44] (Dkt. #21, Ex. A, at 105-107.)

[45] (Dkt. #21, Ex. A, 59:11-18.)

### ii. Whether Boone unreasonably failed to mitigate the harassment

"Th[e] second prong of the defense is intended to fulfill a 'policy imported from the general theory of damages, that a victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of the statute.'"[46] One important factor to this inquiry is how long the plaintiff delayed in taking advantage of available preventative and corrective mechanisms.[47] In fact, "proof . . . [of] an unreasonable failure to use any complaint procedure provided by the employer will normally suffice to satisfy the employer's burden under the second element of the defense."[48]

Boone made no effort to mitigate the alleged harassment she is suing over. She is suing to recover for harassment she endured over a fourth month period: from January, 2012, when she started work at Cementation, to the end of April, 2012, when she stopped working with Lackie.[49] But Boone never attempted to take advantage of any available preventative or corrective measures during this period. Boone asserts she failed to act because she felt uncomfortable making a report. But a hesitation about filing a report does not excuse her delay.[50] While Boone eventually filed a written harassment complaint on May 2, 2012, she is suing only for harassment that occurred before that date.

---

[46] *Holly D.*, 339 F.3d at 1178.

[47] *Id.* at 1178-79 (ruling affirmative defense met, in part, because of plaintiff's delay in reporting harassment).

[48] *Id.*

[49] Boone alleges Lackie's harassment began in January, two weeks after she started at Cementation. She alleges the harassment continued into the end of April, when she reported the harassment for the first time.

[50] *Id.* (rejecting argument that delay in reporting was excusable because plaintiff was "uncomfortable" making a harassment report).

Boone also suggests Cementation should have been on notice of the harassment because two of her co-workers were aware of it. But Cementation has provided unrebutted evidence showing that these co-workers did not have sufficient supervisory powers to put Cementation on notice for purposes of Title VII.[51] In addition, Boone failed to cooperate in the investigation and failed to take advantage of the reasonable corrective measures Cementation offered.[52]

As to the relevant period of time she was harassed, there is no genuine dispute of material fact that Cementation instituted reasonable preventative and corrective measures for workplace sexual harassment, and Boone unreasonably failed to take advantage of these available measures. Cementation cannot be liable for a hostile work environment.

C. **Gender Discrimination**

"In order to establish a prima facie case of discrimination, a plaintiff must show (1) that [she] belongs to a protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action; and (4) similarly situated individuals outside [her] protected class were treated more favorably."[53]

Boone does not address this cause of action in her opposition. Under Local Rule 7-2(d), "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." Thus, Boone's failure to oppose is

---

[51] Boone suggests Kyle Hirch's alleged knowledge of harassment should be imputed to Cementation because Hirch was a "team lead." But for purposes of Title VII, an employer is only liable for actions of a supervisor with sufficient power to take tangible employment actions against the plaintiff. *Vance v. Ball State University*, 133 S.Ct. 2434, 2439 (2013). Here, it is undisputed that Hirch did not have such authority. (Dkt. #21, Ex. G, at 25.).

[52] *Wallace v. San Joaquin Cnty.*, 58 F. App'x 289, 290 (9th Cir. 2003) (unreported) (finding the affirmative defense applied where an employee failed to participate in the investigation of her allegations and did not take advantage of the employer's offer to seek a transfer to another position under a new supervisor).

[53] *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

acquiescence to Cementation's argument. I cannot, however, grant a summary judgment motion merely because it is unopposed, even where local rules might permit it.[54] I must ensure Cementation has met its burden to show an absence of triable issues and entitlement to judgment as a matter of law.

Cementation has met its burden. Cementation provides evidence indicating there were no open positions for which Boone was qualified.[55] Cementation also points out the lack of any evidence showing Boone suffered a qualifying adverse employment action or that men were treated more favorably than her.[56] Cementation is thus entitled to judgment it its favor as to Boone's gender discrimination claim.

D.   **Retaliation**

Title VII prohibits supervisors from retaliating against employees for opposing sexual harassment.[57] The *McDonnell Douglas* burden-shifting analysis applies to Title VII retaliation claims.[58] To establish a prima facie case of retaliation, a plaintiff must show (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two.[59] If a plaintiff establishes a prima facie case, "the burden shifts to the defendant employer to offer evidence that the challenged action was taken for legitimate, non-[retaliatory] reasons."[60] "If the

---

[54] *Henry v. Gill Indus., Inc.,* 983 F.2d 943, 949–50 (9th Cir.1993).

[55] (Dkt. #21, Ex. H, at 29:8-12.)

[56] Boone suggests in her Complaint that she was paid less than men, and that men were more commonly transferred than women. But Cementation has provided unrebutted evidence establishing neither of these allegations is true, and has pointed out the lack of any evidence in the record supporting Boone's claims. *See* (Dkt. #21, at 16-19; Ex. A, at 68:21-77:9.)

[57] 42 U.S.C. § 2000e–3(a).

[58] *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000).

[59] *Id.*

[60] *Dawson v. Entek Int'l,* 630 F.3d 928, 936 (9th Cir. 2011).

Page 11 of 14

defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive."[61]

The parties do not contest that Plaintiff engaged in a protected activity when she submitted a written complaint against Lackie for sexual harassment. Thus I first need to determine whether the other elements of Boone's prima facie case are met.

### i. Adverse Employment Action

Title VII's anti-retaliation provision provides broader protection than that afforded to sexual harassment generally.[62] Instead of having to show a "tangible employment action," to prove retaliation the plaintiff need prove only a "materially adverse action": an action which reasonably "might have dissuaded a reasonable worker from making or supporting a charge" of harassment.[63] A supervisor's negative employment reference may constitute a materially adverse action.[64]

Cementation argues that Boone's retaliation claim fails because she cannot show she was denied a rehire or transfer. Cementation ignores that a negative job reference, alone, may constitute a materially adverse action for purposes of a retaliation claim. A reasonable jury could find that a negative recommendation for rehire would dissuade a reasonable worker from opposing harassment. Thus, Boone has established a triable issue on this element.

### ii. Causal link

The causal link between an adverse action and a retaliatory motive may be established by circumstantial evidence, such as the employer's knowledge that the employee engaged in

---

[61] *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).
[62] *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).
[63] *Id.* at 68
[64] *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997).

protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.[65]

Cementation fails to address the causal nexus between Lackie's negative reference and his alleged retaliatory motive. Prior to Boone reporting the sexual harassment, Lackie had given Boone favorable ratings in a review and stated she qualified for continued employment.[66] A month later, after Boone had reported the harassment and Finch had informed Lackie of Boone's report, Lackie filled out another review stating he did not recommend Boone for rehire.[67] Lackie gave Boone a negative review shortly after he learned Boone reported him for harassment. A reasonable juror could find the two events casually linked. Boone has therefore raised a genuine dispute of fact material to this element.

        iii.        **Pretext**

Cementation asserts Lackie had a legitimate, non-retaliatory reason for giving Boone a poor work review, specifically, her attitude.[68] Cementation argues Boone has not raised a triable issue as to whether its proffered motive is pretext.[69] I disagree. Boone has provided evidence showing Lackie harassed her and gave her a negative review shortly after she filed her complaint, despite giving her positive reviews previously. Cementation has provided no evidence showing that Boone had a negative attitude, save Lackie's own testimony. Viewing the facts in a light most favorable to Boone, a reasonable juror could find that Lackie's allegations about Boone's

---

[65] *Jordan v. Clark*, 847 F2d 1368, 1376 (9th Cir. 1988).
[66] (Dkt. #21, Ex. A, at 33:20-34:14.)
[67] (Dkt. #21, Ex. I, at`1 37:21-23, 38:18-22.)
[68] (Dkt. #29, at 16-18.)
[69] (*Id.*)

attitude are pretext, and that Lackie gave Boone a poor review in retaliation for her harassment complaint.

Boone has set forth a prima facie case of retaliation, and she has established a triable issue of fact as to whether Lackie's negative work reference was motivated by retaliatory animus. Cementation is thus not entitled to judgment on Boone's retaliation claim.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that defendant Cementation USA Inc.'s Motion for Summary Judgment (Dkt. #21) is GRANTED IN PART. Judgment is entered in favor of Cementation as to Boone's first cause of action for hostile work environment harassment, second cause of action for quid pro quo harassment, and third cause of action for gender discrimination. The Motion is DENIED as to Boone's fourth cause of action for retaliation.

DATED this 9th day of December, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE